Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Wednesday, January 19, 2011 3:02:00 PM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| TEDDY T. WILES, SR., and | ) | Case No. 02-21206 |
| IDA MARIE WILES, | ) | |
| | ) | |
| Debtors. | ) | Chapter 7 |
| _____ | ) | |
| | ) | |
| TEDDY T. WILES, SR., and IDA MARIE | ) | |
| WILES, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 10-123 |
| | ) | |
| CHARLES WISE, III, and MORTGAGE | ) | |
| ELECTRONIC REGISTRATION | ) | |
| SYSTEMS, INC., (MERS), as nominee for | ) | |
| HOMECOMINGS FINANCIAL | ) | |
| NETWORK, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION

Teddy and Ida Wiles (the "Debtors") filed this adversary proceeding against Charles Wise, III, and Mortgage Electronic Registration Systems, Inc. ("MERS"), alleging three causes of action: (1) violation of the Bankruptcy Code's discharge injunction of 11 U.S.C. § 524 against Mr. Wise and MERS; (2) violation of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-2-128(e), against MERS; and (3) a request for a declaration that a purported deed of trust in favor of MERS is invalid as a lien against the Debtors' real property.

1

Mr. Wise and/or MERS request that the court dismiss all counts of the Debtors' adversary complaint against them (except for MERS's alleged violations of the discharge injunction) on the basis that the Debtors have either failed to state a claim upon which relief can be granted, or that this court lacks subject matter jurisdiction to adjudicate the stated cause of action.

For the reasons stated herein, the court will grant the motions to dismiss.

## I. STANDARD OF REVIEW

Mr. Wise seeks to dismiss Count I against him – alleging a violation of the Bankruptcy Code's discharge injunction – on the grounds that the Debtors' have failed to state a claim upon which relief may be granted under Fed. R. Bankr. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(6) into bankruptcy adversary proceedings.

In adjudicating a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them, and a court may dismiss the complaint "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). This tenant, however, is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). Defeating a motion for relief under Rule 12(b)(6) requires the plaintiff to provide more in the complaint than "mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). The factual allegations in the complaint "must be enough to raise a right of relief above the speculative level," *id.* at 1959, and be enough to "state a claim to relief that is plausible on its face." *Ashcroft*, 129 S. Ct. at 1949. Determining whether a complaint is "facially plausible" is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.* at 1950.

Mr. Wise and/or MERS seek to dismiss Counts II and III for lack of subject matter jurisdiction under Fed. R. Bank. P. 7012(b), which incorporates Fed. R. Civ. P. 12(b)(1) into bankruptcy adversary proceedings.

In adjudicating a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), the court is to "regard the pleadings as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."

2

*Richmond, F. & P. R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). The "court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" *Evans v. B. F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999) (citation omitted). If factual allegations regarding the existence of subject matter jurisdiction are in dispute, then the court may resolve the factual issues in adjudicating the motion to dismiss. *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986).

## II. BACKGROUND

As stated in the Debtors' complaint, they filed a Chapter 7 bankruptcy petition on April 8, 2002, listing a debt owed to MERS for $39,717.58. On their schedule of real property, the Debtors stated that they jointly owned real property in Albright, West Virginia worth $26,400. The Debtors claimed the full value their real property as exempt.

On May 24, 2002, MERS filed a motion for relief from the automatic stay to proceed against the Debtors' real property, believing the debt owed to it to be secured by that property. On July 1, 2002, however, its counsel filed a motion to withdraw its stay relief motion on the grounds that MERS's security interest in the real property was invalid. The court granted the motion to withdraw, the Debtors received their Chapter 7 discharge on July 17, 2002, and their case was closed the same day.

After the closing of the Debtors' bankruptcy case, MERS sent the Debtors monthly invoices, and the Debtors endured weekly telephone calls from MERS seeking to collect on the note allegedly secured by a deed of trust on the Debtors' real property. In July 2003, the substitute trustee under the deed of trust attempted to sell the Debtors' property until being informed that the obligation secured by the deed of trust was discharged in bankruptcy. The Debtors contend that MERS violated their discharge injunction at least four time each month from August 2003 to May 2009.

On April 24, 2009, MERS, through its counsel, Charles C. Wise, III, filed an civil action against the Debtors in the Circuit Court of Preston County West Virginia to reform the invalid deed of trust. The Preston County Complaint states:

> This is an action for reformation of a Deed of Trust that Teddy T. Wiles and Ida M. Wiles agreed to execute in favor of Plaintiff MERS and Homecomings Financial, where a correct property address but incorrect property description was included in the Deed of Trust. MERS also seeks a declaratory judgment that it is a lien holder with a first priority lien against a full interest in the real estate defined

3

>
> herein.
>
> . . . .
>
> 17. The Wiles[es] remain obligated to assist MERS and Homecomings Financial with obtaining a marketable security interest in the Property, pursuant to the Document Agreement covering "Lost Misplaced, Misstated, or Inaccurate Documents," executed by the Wiles on or about September 22, 2000 . . . .
>
> . . . .
>
> 26. Because the Deed of Trust and MERS's lien on the Property was not avoided by the Trustee or debtors, it passed through Bankruptcy and remains effective as against the Wiles[es].
>
> . . . .
>
> 28. MERS does not seek to recover monetary relief under the Note, nor does it seek any deficiency judgment against the Wiles[es] under the Note or Deed of Trust.
>
> . . . .
>
> 32. Even if the Deed of Trust contained an incorrect description and could be challenged by third parties, the Deed of Trust was, and remains, effective as against the grantors, the Wiles[es].
>
> . . . .
>
> WHEREFORE, Plaintiff requests that this Court enter an order declaring that [MERS] is entitled to the benefits and protections afforded to a lender whose loan is secured by a first priority lien against a full interest in the real estate . . . and that the Deed of Trust should be reformed to correct the incorrect description . . . .

(Ex. Compl.).

On August 16, 2010, on the motion of the Debtors, the court reopened their Chapter 7 bankruptcy case. This adversary proceeding was filed against the Defendants on September 7, 2010.

### III. DISCUSSION

Mr. Wise requests that the court dismiss Count I against him on the grounds that he is not violating the Bankruptcy Code's discharge injunction in seeking to reform a deed of trust that would be a lien against the Debtor's real property – not a personal obligation of the Debtors. MERS requests that the court dismiss Count II, alleging violations of the West Virginia Consumer Credit and Protection Act, on the basis that the court lacks subject matter jurisdiction over alleged, post-discharge violations of State law. Mr. Wise and MERS seek dismissal of Count III on the grounds that the Debtors lack standing to declare MERS's deed of trust invalid.

**A.    Mr. Wise's Motion to Dismiss Count I**

Mr. Wise argues that Count I, alleging a cause of action for violation of the Debtors' discharge injunction, fails to state a claim against him on the basis that, as the attorney for MERS's Preston County action to reform its deed of trust, he is only seeking *in rem* relief against the

4

Debtors' property; he is not seeking to enforce the deed of trust as a personal obligation of the Debtors.

When a debtor receives a bankruptcy discharge under 11 U.S.C. § 524, the entry of that discharge voids any personal liability that the debtor may have with respect to a lien against the debtor's real property, and it prohibits any action or act to collect, recover, or offset any such debt as a personal liability of the debtor. 11 U.S.C. § 524(a)(1-2). Only a debtor's personal liability on a pre-petition debt or lien is extinguished; a creditor's right to proceed against property of a discharged debtor survives, giving rise to the adage that "liens pass through bankruptcy unaffected." *E.g.*, *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) ("[A] bankruptcy discharge extinguishes only one mode of enforcing a claim – namely, an action against the debtor in personam – while leaving intact another – namely, an action against the debtor in rem"); *Garran v. SMS Fin. V, LLC (In re Garran)*, 338 F.3d 1, 5 (1st Cir. 2003) ("Since a judicial lien attached to property is a liability in rem, it is not routinely discharged at the conclusion of the bankruptcy case."); *Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995) ("[L]iens pass through bankruptcy unaffected. A bankruptcy discharge extinguishes only in personam claims against the debtor(s), but generally has no effect on an in rem claim against the debtor's property."); *Wrenn v. American Cast Iron Pipe Co. (In re Wrenn)*, 40 F.3d 1162, 1164 (11th Cir. 1994) ("We therefore conclude that [the judgment] lien remains enforceable [after discharge], unless some provision of the Bankruptcy Code aside from the discharge provision makes the lien avoidable."); *Robinson v. Robinson (In re Robinson)*, No. 05-137, 2007 Bankr. LEXIS 2076 at *9-10 (Bankr. N.D.W. Va. June 25, 2007) (same).

Importantly, a discharge in bankruptcy does not extinguish debt – the debt is still in existence – only the debtor's personal liability for the payment of that debt is discharged by the Bankruptcy Code. *E.g.*, *United States v. Alfano*, 34 F. Supp. 2d 827, 841 (E.D.N.Y. 1999) ("Part of the conceptual difficulty may arise from the interplay between a discharge of the debtor's debt and an extinguishment of the creditor's claim. The key point is that although a debtor's debt may be personally discharged in bankruptcy, the underlying debt is not extinguished."); *Pague v. Harshman (In re Pague)*, No. 09-71, 2010 Bankr. LEXIS 912 at *12 (Bankr. N.D.W. Va. April 5, 2010) (holding that the creditor was allowed to enforce her lien interest in rem after discharge, but could not pursue the debtor personally on the discharged debt); *Robinson*, 2007 Bankr. LEXIS at *11 ("[A] discharge in bankruptcy has no effect on the validity of the underlying debt; rather, a discharge in

5

bankruptcy merely releases the debtor from any obligation that the debtor has to repay that debt.").

Accordingly, after the Debtors' discharge in this case, MERS was still owed money pursuant to its pre-petition extension of credit to the Debtors; however, it could not seek to collect that indebtedness from the Debtors because their bankruptcy discharge relieved them of all personal responsibility on that debt. MERS was limited to enforcing it alleged lien rights only against the Debtors' real property.

Although the nature of the relief sought in the Preston County Complaint filed by Mr. Wise on behalf of MERS states that the action is only against the Debtors' property – and no monetary relief is being sought from the Debtors under the pre-petition note – the complaint does make certain allegations against the Debtors regarding their personal responsibility. Namely, in ¶ 17, MERS seeks to hold the Debtors accountable to assist them with obtaining a marketable security interest in the Debtors' real property. In ¶ 26, MERS states that its lien remains effective as against the Debtors. In ¶ 32, MERS states that the deed of trust remains effective against the Debtors.

In isolation, ¶¶ 17, 26, and 32 appear to make allegations concerning the personal responsibility of the Debtors on a debt that was discharged by them in bankruptcy. The court does not believe, however, that the Debtors have stated a plausible claim against Mr. Wise for a violation of the discharge injunction based on his filing of the Complaint. More specifically, the stated nature of the Complaint is to reform a deed of trust against real property – not to collect a debt from the Debtors. The request for relief only seeks reformation of the deed of trust to correct an erroneous property description – no request exists for judgment against the Debtors. Additionally, ¶ 28 of the Complaint specifically states that no monetary relief or deficiency judgment is sought against the Debtors. In sum, the court finds that the Preston County Complaint merely seeks to enforce a purported lien interest in real property, if one exists.

Consequently, the court will grant Mr. Wise's request to dismiss Count I of the Debtors' adversary complaint only to the extent that it alleges a cause of action against him. No disposition as to the allegations against MERS or its agents pursuant to Count I is made at this time.

**B.     Subject Matter Jurisdiction Over Count II - Post-Petition Violations of the WVCCPA**

In Count II, the Debtors allege that MERS violated W. Va. Code § 46A-2-122(e) of the West Virginia Consumer Credit and Protection Act when it attempted to collect a debt by communicating directly with the Debtors at a time when they were represented by an attorney. MERS asserts that

6

this court has no subject matter jurisdiction over this cause of action on the basis that all the contacts alleged to have occurred were after the Debtors' bankruptcy case had closed.

The district courts have original and exclusive jurisdiction of all cases under title 11 and original, but non-exclusive jurisdiction of all civil proceedings arising under, arising in, or related to a case under title 11. 28 U.S.C. § 1334. The district court for this District has referred this jurisdictional grant to the bankruptcy court, as authorized by 28 U.S.C. § 157(a). A close examination of bankruptcy court jurisdiction under § 1334 is important because the "jurisdiction of the bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." *Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995).

Controversies arise in title 11 when they "'are not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy[; i]n other words, a 'controversy arises in Title 11' when 'it would have no practical existence but for the bankruptcy.'" *Grausz v. Englander*, 321 F.3d 467, 471 (4th Cir. 2003) (citations omitted). Claims arise under title 11 if the claims "clearly invoke substantive rights created by bankruptcy law." *Glinka v. Federal Plastics Mfg., Ltd. (In re Housecraft Indus. USA, Inc.)*, 310 F.3d 64, 70 (2d Cir. 2002). A proceeding is related to a bankruptcy case when "the outcome of that proceeding could conceivably have any effect on the estate. . . . [and] could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively). . . ." *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). *See also Celotex Corp.*, 514 U.S. at 308 n.6 (1995) ("[W]hatever ['related to'] test is used, these cases make clear that bankruptcy courts have no jurisdiction over proceedings that have no effect on the estate of the debtor."); *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000) ("This court has adopted the *Pacor* related to test . . . .").

This court previously addressed its subject matter jurisdiction over alleged post-petition violations of § 46A-2-128(e) and concluded that no such jurisdiction existed under § 1334:

> The Debtor's cause of action arising under W. Va. Code § 46A-2-128(e) is not one that "arises in" or "arises under" title 11 because a debtor's right to be free from a debt collector's contacts when the debtor is represented by an attorney exists independently of the Bankruptcy Code, and the Bankruptcy Code does not attempt to regulate how that contact is to be made, when and if such contact is appropriate. Likewise, Debtor's cause of action under § 46A-2-128(e) is not "related to" the Debtor's bankruptcy case because whether the Debtor wins or loses, there will be no affect on the bankruptcy estate.

7

> Therefore, the court concludes that the jurisdictional grant in 28 U.S.C. § 1334, as referred to the bankruptcy courts pursuant to § 157(a), as interpreted by the Third Circuit in its "conceivable effects" test first articulated in *Pacor*, which has been adopted by the Court of Appeals for the Fourth Circuit, does not provide a basis for the court's exercise of jurisdiction over the Debtor's State law cause of action under W. Va. Code § 46A-2-124(e) because win, lose, or draw, the bankruptcy estate will be wholly unaffected by the outcome of the litigation.

*Johnston v. Valley Credit Servs. (In re Johnston)*, No. 06-180, 2007 Bankr. LEXIS 1174 at *16-19 (Bankr. N.D.W. Va. April 12, 2007).

The Debtors assert that this court has "pendent jurisdiction" under 28 U.S.C. § 1334(b) as "an extension of supplemental jurisdiction [that] permits a federal court . . . to entertain a state claim where the federal court would otherwise lack subject matter jurisdiction in an action where the state law claim arises out of the same event, or connected series of events, as the federal claim." (Document No. 12, p.2). As the Court of Appeals for the Ninth Circuit recently stated in *Battle Ground Plaza, LLC v. Ray (In re Ray)*, 624 F.3d 1124, 1135 (9th Cir. 2010) – even when no "related to" jurisdiction exists – a bankruptcy court has ancillary jurisdiction "to permit disposition by a single court of factually interdependent claims." The terms "ancillary" jurisdiction, as well as "pendant claim" and "pendant party" jurisdiction are now generally viewed by the courts and commentators as being encompassed within the statutory term "supplemental jurisdiction" as set forth in 28 U.S.C § 1367. 16 *Moore's Federal Practice – Civil* § 106.03[1] (2010).

In *Johnston*, 2007 Bankr. LEXIS 1174, this court considered whether it had supplemental jurisdiction to hear and determine a claim over which it did not have an independent basis to assert jurisdiction under § 1334, but which arose out of the same core of operative fact as the claim over which the court had subject matter jurisdiction under § 1334. The court concluded that it could not exercise supplemental jurisdiction for five reasons:

> First, by its express terms, § 1367(a) provides that "the district court shall have supplemental jurisdiction." No similar grant of authority exists in the statute conferring supplemental jurisdiction on bankruptcy courts. The jurisdictional basis for the bankruptcy court is set forth in § 1334. Moreover, pursuant to § 157(a), the district court may refer to the bankruptcy court all cases "under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." This language plainly refers to the grant of federal jurisdiction over bankruptcy cases in § 1334, and does not include any reference to Congress's grant of supplemental

8

jurisdiction to the district courts. Indeed, the Order of Reference entered in this District on August 24, 1984, states that all such cases falling under the umbrella of § 157(a) are referred to the bankruptcy court and that Order of Reference does not mention any grant of supplemental jurisdiction. Accordingly, any finding that the bankruptcy court enjoys the same grant of supplemental jurisdiction as the district court must have some other basis than the plain language of the statute.

Second, should a bankruptcy court exercise supplemental jurisdiction under § 1367, which would include all claims having some logical relationship to the bankruptcy proceeding, then the "related to" grant of jurisdiction in § 1334(b) would be rendered superfluous. In essence, an exercise of a court's supplemental jurisdiction under § 1367 would include all, or almost all, instances to which § 1334(b)'s "related to" jurisdiction would already apply. Such a result is contrary to the well-established rules of statutory construction that statutes should be read in harmony, and that all words of a statute should be given effect. Moreover, assuming that § 1334(b)'s "related to" jurisdictional grant is itself a grant of supplemental jurisdiction to the bankruptcy court, instead of a specific jurisdictional grant under the *Pacor* standard, then by its terms, § 1367 would not be an available source for exercising jurisdiction. Section 1367(a) expressly states that "[e]xcept . . . as expressly provided otherwise by federal statute . . . the district court shall have supplemental jurisdiction. . . ." If § 1334(b)'s "related to" jurisdiction is a grant of supplemental jurisdiction, then the exception to § 1367's grant of supplemental jurisdiction is applicable.

Third, the United States Supreme Court has admonished that federal courts, and their jurisdiction, are created by written law. Before a federal court can exercise jurisdiction over a matter, two things are necessary: (1) "'[t]he constitution must have given the court the capacity to take it'"; and (2) "'an act of Congress must have supplied it . . . . To the extent that such action is not taken, the power lies dormant.'" A federal court should not read a jurisdictional statute broadly and should not assume that the full Constitutional reach of federal court jurisdiction has been exercised by Congress. Reading 28 U.S.C. §§ 157, 1334, and the District Court's Order of Reference to include a grant of jurisdiction under § 1367 when no such express statutory grant is present is contrary to the Supreme Court's admonishment on how a court is to interpret a jurisdictional statute.

Fourth, while the court realizes that efficiency and convenience to the parties results should the court be able to exercise supplemental jurisdiction, and that it may be onerous to litigate claims with a similar factual background indifferent courts, the United States Supreme Court has already addressed such concerns. In short, convenience does not confer subject matter jurisdiction.

Fifth, firm policy reasons also justify the court's conclusion that bankruptcy courts do not enjoy the same § 1367 supplemental jurisdiction power as the district courts. Foremost is that the aim of the Bankruptcy Code is "in the main, to secure equal

9

distribution among creditors." The aim of the Bankruptcy Code is not to adjudicate disputes not created by the Bankruptcy Code that have no effect on the bankruptcy estate. The very basis for the Supreme Court's decision in *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, which gave rise to the jurisdictional fix in the 1984 Bankruptcy Amendments and Federal Judgeship Act, was that a bankruptcy court, as an Article I Congressional creation, could not exercise the essential attributes of an Article III court. Thus, where appropriate, a bankruptcy court should conservatively exercise jurisdiction in recognition of its limited Article I status, and should not venture into the unwarranted exercise of the essential attributes of Article III judicial power. Moreover, because neither the Fourth Circuit nor the United States Supreme Court has made a determination of whether or not the bankruptcy courts enjoy supplemental jurisdiction under 28 U.S.C. § 1367, the fairest course of action for the litigants is to take a conservative approach to defining bankruptcy court jurisdiction. Should the bankruptcy court exercise supplemental jurisdiction and be wrong, then any judgment rendered on the cause of action may be subject to avoidance under Fed. R. Civ. P. 60(b)(4); Fed. R. Bankr. P. 9024.

*Id.* at *21-28.

The Debtors in this case have not advanced any argument that would make the court reconsider its earlier statement of the law and its refusal exercise jurisdiction over post-petition state law claims under the West Virginia Consumer Credit and Protection Act. Accordingly, the court will dismiss Count II of the Debtors' adversary complaint against MERS without prejudice.

**C.     Subject Matter Jurisdiction Over Count III - Lien Invalidity**

Among other allegations in Count III of the Debtors' adversary complaint, they assert that under 11 U.S.C. § 522 they may avoid MERS's lien against their real property.[1]

Both Mr. Wise and MERS identify §§ 522(g) and (h) as the subsections upon which the Debtors are relying to declare MERS's lien invalid. They argue that §§ 522(g) and (h) are not applicable, and considering that the only remaining allegations in Count III concern the application of state law, which were abandoned by the Debtors' bankruptcy estate at closing, they state that Count III is not related to the Debtors' bankruptcy petition; thus, this court does not have subject matter jurisdiction over Count III.

---

[1] The Debtors also cite to the automatic stay of 11 U.S.C. § 362(a); however, the automatic stay terminated as to the Debtors and their estate when the Debtors' Chapter 7 case closed on July 17, 2002. § 362(c)(2). Thus, the automatic stay is not a basis for asserting substantive bankruptcy rights in this adversary proceeding when all the alleged acts of Mr. Wise and MERS occurred after their bankruptcy case had closed.

10

The Debtors did cite to § 522 as one basis upon which they seek to declare MERS's lien invalid. If the Debtors have a cause of action under § 522, then they have asserted a right that arises under the Bankruptcy Code because they are invoking a substantive right created by bankruptcy law over which this court has subject matter jurisdiction.

Importantly, it is the Debtors in this case that are seeking to declare the lien of MERS to be invalid – not their Chapter 7 trustee. When the Chapter 7 trustee refuses to act to avoid a lien of a creditor, the Bankruptcy Code provides a debtor with certain, more limited, lien avoidance rights:[2]

> (h) The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if--
> > (1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and
> > (2) the trustee does not attempt to avoid such transfer.

§ 522(h).

Assuming that the Debtors in this case can meet the requirements of § 522(h)(1-2), then they still must meet the requirement of § 522(g)(1), which provides:

> (g) . . . the debtor may exempt . . . property that the trustee recovers under section 510(c)(2), 542, 543, 550, 551, or 553 of this title, to the extent that the debtor could have exempted such property . . . if such property had not been transferred, if--
> > (1)
> > > (A) such transfer was not a voluntary transfer of such property by the debtor; and
> > > (B) the debtor did not conceal such property;

§ 522(g)(1).

Accordingly, "[r]eading these statues together reveals that, as a prerequisite to invoking the avoidance powers of § 522(h), the following conditions must be met: (1) the transfer sought to be avoided must not be a voluntary transfer by the debtor; (2) the debtor must not have concealed the transferred property; (3) the transfer of the property must be subject to avoidance under, inter alia,

---

[2] The court has reviewed the cases cited by the Debtors, *Putnam County Bank v. Tolley (In re Tolley)*, No. 09-1550, 2010 U.S. Dist. LEXIS 84123 (S.D.W. Va. Aug., 16, 2010); *In re Law Developers, LLC*, 404 B.R. 136 (E.D.N.C. 2008); and *In re Atlas Fire Apparatus, Inc.*, 56 B.R. 927 (E.D.N.C. 1986). In none of these cases were the moving parties asserting rights under 11 U.S.C. § 522(g) and (h) based on a trustee's failure to bring an avoidance action.

section 544; and (4) the trustee must not have attempted to avoid the transfer of the property. Assuming that these prerequisites are satisfied, then the Debtor may avoid the transfer 'to the extent that the debtor could have exempted such property.'" *In re Bardell*, 361 B.R. 468 , 474-75 (Bankr. N.D.W. Va. 2007).

Under § 522(g)(1)(A), a "voluntary transfer" is one that results "'from the debtor's free will'" where the debtor acts "'with knowledge of all essential facts and free from the persuasive influence of another.'" *In re Sumner*, No. 05-14243, 2007 Bankr. LEXIS 4406 at *8-9 (Bankr. N.D. Ga. Nov. 26, 2007) (quoting *In re Davis*, 169 B.R. 285, 296 (E.D.N.Y. 1994)).

Here, the Debtors obtained a loan from Homecomings Financial on September 22, 2000, for $39,900, and agreed to secure the loan with a first priority deed of trust against their real property. The grant of a security interest in real property is a voluntary transfer within the meaning of § 522(g)(1)(A); consequently, the Debtors are unable to exercise a Chapter 7 trustee's avoidance powers and the Debtors have no cause of action against either Mr. Wiles or MERS under § 522 of the Bankruptcy Code. *See, e.g.*, *Rodriguez v. Dorine's Bail Bonds, Inc. (In re Rodriguez)*, 361 B.R. 887 (Bankr. D. Ariz 2007) ("Having failed to establish that the granting of the Deeds of Trust were involuntary transfers as required by § 522(g)(1), the Debtor lacks standing under § 522(h) to set aside the Deeds of Trust."); *In re Bethea*, 275 B.R. 127, 133 (Bankr. D.C. 2002) ("The debtor has not disputed that he voluntarily transferred the mortgage lien interest in the property . . . . Thus, § 522(g)(1)(A) precludes that debtor from exempting the lien once avoided."); *In re Strom*, 46 B.R. 144 , 148 (Bankr. E.D.N.C. 1985) (same); *In re Echoles*, 21 B.R. 280, 282 (Bankr. D. Ariz. 1982) (same).

Only two other allegations are contained in the Debtors' adversary complaint concerning the alleged invalidity of MERS's lien.[3] The Debtors assert that MERS's lien is invalid on the grounds

---

[3] The Debtors also assert jurisdiction based on a previous order entered by this court. The Debtors state that MERS's bankruptcy counsel filed a motion for relief from the automatic stay when their bankruptcy case was active in 2002. The stay relief motion was followed by a motion to withdraw it on the grounds that MERS believed its deed of trust was invalid. Based on MERS's motion to withdraw, the court entered an order grating the motion on the basis that MERS (not the court) had determined its security interest was invalid. Thus, the court never addressed the merits of the stay relief motion, only the merits of MERS's motion to withdraw its request for stay relief. In short, nothing in the court's record is a binding declaration by the court that MERS's lien is invalid, and nothing exists that would preclude MERS from bringing its

12

that the legal description in the deed of trust is not the Debtors' real estate, and that the deed of trust is invalid on the basis that the signing of the deed of trust took place without the supervision of an attorney. Both of these allegations arise under State law and therefore do not "arise under" or "arise in" title 11. Moreover, the Debtors' bankruptcy case was fully administered on July 17, 2002, with the Chapter 7 trustee abandoning any interest the bankruptcy estate had in the Debtors' real property as of that date – except for that property that had already been exempted by the Debtors. 11 U.S.C. § 554(c). The outcome of the Debtors' state law claims against MERS and/or Mr. Wise would have no impact on the bankruptcy estate and any benefit received in the litigation would be only for the Debtors.

Consequently, the outcome of Count III, lien invalidity, is not "related to" a case under the Bankruptcy Code and this court lacks subject matter jurisdiction under 28 U.S.C. § 1334 to adjudicate the Debtors' state law causes of action. *See, e.g.*, *Ostroff v. Am. Home Mortg. (In re Ostroff)*, 433 B.R. 442 (Bankr. E.D. Va. 2010) (no jurisdiction to adjudicate debtor's state law claim of lien invalidity on exempt property); *Johnston*, 2007 Bankr. LEXIS 1174 at *17 ("Debtor's cause of action . . . is not 'related to' the Debtor's bankruptcy case because whether the Debtor wins of loses, there will be no affect on the bankruptcy estate.").

Therefore, the court will dismiss Count III of the Debtors' complaint because the Debtors have failed to state a claim against Mr. Wise or MERS under 11 U.S.C. § 522(h) and (g), and the remaining allegations against Mr. Wise and MERS under Count III are allegations over which this court has no jurisdiction (and are therefore dismissed without prejudice) because those allegations do not arises in, arises under, or relate to the Debtors' bankruptcy case.

## IV. CONCLUSION

For the above-stated reasons, the court will enter a separate order that grants Mr. Wise's and MERS's motions to dismiss.

---

action to reform its deed of trust following the closing of the Debtors' bankruptcy case. The court is not being asked to enforce or interpret its own orders in Count III of the Debtors' adversary proceeding such that it might have jurisdiction over the action. The effect, if any, of the statement or MERS's counsel regarding its lien status is not at issue before this court.